```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

ANTONIO ROSARIO,

                    Petitioner,        07 Civ. 2756 (RWS)

     -against-
                                            OPINION
LAWRENCE SEARS, Superintendent,
Franklin Correctional Facility,

                    Respondent.

------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/11/08

A P P E A R A N C E S :

Pro se

ANTONIO ROSARIO
Prisoner Number 04-A-3778
Franklin Correctional Facility
62 Bare Hill Road
Malone, New York  12953

Attorneys for Respondent

ANDREW M. CUOMO
Attorney General of the State of New York
120 Broadway
New York, New York 10271
By:  Alyson J. Gill, Esq.
     Jodi A. Danzig, Esq.

corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. For the reasons set forth below, the petition is dismissed.

**Prior Proceedings**

Rosario's state custody arises from a judgment of conviction entered on May 28, 2004, in New York State Supreme Court, New York County, convicting him, after a jury trial, of Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law (hereinafter "Penal Law") § 220.39(1)), Criminal Possession of a Controlled Substance in the Third Degree (Penal Law § 220.16(1)), and Criminal Possession of a Controlled Substance in the Fourth Degree (Penal Law § 220.09(1)). As a second felony offender, Rosario was sentenced to an indeterminate term of imprisonment of eight to sixteen years for the third-degree sale count, and indeterminate prison term of eight to sixteen years for the third-degree possession count, and an

1

indeterminate prison term of seven and one half to fifteen years for the fourth-degree possession count, all terms to be served concurrently.

Rosario appealed with the assistance of counsel, arguing that (1) he was denied his due process right to a fair trial when the prosecutor, during summation, commented on Rosario's failure to testify, thereby implicating his constitutional right to remain silent; (2) he must be resentenced because the sentencing court did not allow Rosario to be interviewed by the Department of Probation prior to sentencing; and (3) his sentence of 8 to 16 years is excessive and should be reduced in the interest of justice. On May 18, 2006, the Appellate Division, First Department, affirmed Rosario's judgment of conviction. The court ruled that "the [trial] court's standard 'no inference' instruction under C.P.L. § 300.10(2), which the jury is presumed to have followed, was sufficient to prevent any prejudice." People v. Rosado, 29 A.D.3d 430, 431-32 (N.Y. App. Div. 2006). The Appellate Division also rejected Petitioner's claim that his sentence was invalid because the Probation Department failed to interview him, noting that Petitioner had refused to be produced for an

2

interview. Finally, the court found "no basis" to reduce Petitioner's sentence. Id. at 431.

With the assistance of counsel, Petitioner sought leave to appeal to the New York Court of Appeals. In his application, Petitioner asked the court to review all of the claims that he raised in the Appellate Division. On July 13, 2006, the New York Court of Appeals denied leave to appeal. People v. Rosario, 7 N.Y.3d 794 (N.Y. 2006) (Table).

Rosario filed this pro se petition for habeas corpus on April 5, 2007, reiterating his claims that (1) the prosecutor improperly commented on his failure to testify at trial, in violation of the Fifth and Fourteenth Amendments of the United States Constitution; (2) his sentence is invalid because he was not interviewed by the Probation Department; and (3) his sentence is excessive, and should be reduced. The State of New York filed its opposition on July 30, 2007.

**The Trial Testimony**

1. **The People's Case**

On October 15, 2003, at around 6:00 p.m., Undercover Police Officer (hereinafter "UC") 29512 telephoned 917-407-6710, a cocaine delivery service that was known to the police, and asked to speak to "Shorty."[1] The man on the other end of the phone had a "Latin accent," and asked UC 29512, in "choppy" English, who he was. UC 29512 identified himself as "Mike" and told the man that he wanted to purchase four $20 bags of cocaine. The two men then agreed to meet in ten minutes outside a bar on 14th Street between Seventh and Eighth Avenues in Manhattan, to consummate the deal. Trial Tr. vol. 2, 7-13, May 10, 2004; Trial Tr. vol. 2, 55-56, May 11, 2004.

About fifteen minutes later, a gray van with tinted windows pulled up to the rendezvous and a man, later identified as Daury Moncion, waved over UC 29512. UC 29512 walked over to the van and spoke to Petitioner, who was seated in the passenger seat. The lighting in the area at the time was "bright." Petitioner asked, "you called?" UC 29512 confirmed that he was the caller, and asked

---

[1] At the time, the phone number corresponded to a Sprint PCS account that was in petitioner's name. Trial Tr. vol. 2, 146-48, 153, 155-57. Records from Sprint showed that the phone received an incoming call on October 15, 2003, at approximately 6:15 p.m., which lasted for about two minutes. Id. 147-48. The phone was de-activated on March 18, 2004. Id. 152.

4

Petitioner if he was Shorty. Petitioner said that he was, and invited UC 20512 into the van. Petitioner addressed UC 29512 in English, but did not speak in full sentences; his responses were "very short" and "choppy." Trial Tr. vol. 2, 13, 28-31, May 10, 2004; Trial Tr. vol. 2, 44-45, 66-70, 125, May 11, 2004.

UC 29512 declined to enter the van. Petitioner and Moncion then had a brief conversation in Spanish, and drove the van about fifteen feet up the street. UC 29512 approached again from the passenger side, and saw petitioner put his hand in his waistband. Petitioner then reached into the van's glove compartment and handed something to Moncion. Moncion then "ducked down to the side door to his left." At that point petitioner exited the van and once again invited UC 29512 to get inside, which UC 29512 did. Petitioner crossed 14th Street and walked toward a Subway sandwich shop, followed by a member of the field team that had accompanied UC 29512. Trial Tr. vol. 2, 13-17, 29, May 10, 2004; Trial Tr. vol. 2, 45-47, 49-51, 56-57, 68, 70-71, 79, 126-27, May 11, 2004.

Meanwhile, inside the van Moncion asked UC 29512 how many envelopes of cocaine he wanted. UC 29512

5

91-114, 128-32, May 11, 2004; Trial Tr. vol. 2, 176-84, May 12, 2004.

2. **Stipulation**

The parties stipulated that the van Moncion and Petitioner drove to the rendezvous was registered to Moncion. Id. 187-88.

3. **The Defense Case**

Private Investigator Rodney S. Jones, Sr., licensed in New York State, testified that on May 11, 2004 (the day before his testimony), he called 917-407-6710. According to Jones, someone picked up the phone but did not speak. Jones stated that he called the number again the following day and was transferred to a voice mailbox. Jones believed that the telephone number belonged to a T-Mobile account. Id. 189-91.

4. **The Verdict and Sentence**

On May 13, 2004, a jury convicted Petitioner of Criminal Sale of a Controlled Substance in the Third

Degree, Criminal Possession of a Controlled Substance in the Third Degree, and Criminal Possession of a Controlled Substance in the Fourth Degree. Trial Tr. vol. 2, 292-95, May 13, 2004. On May 28, 2004, the trial court adjudicated Petitioner a second felony offender and sentenced him as described above.

## I. Standard of Review

As to a claim adjudicated on the merits by a state court, Petitioner can obtain habeas corpus relief by showing that the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1) (2000 ed., Supp. V). With respect to the "contrary to" clause, the writ may issue if the state court decision is contrary to Supreme Court precedent on a question of law or if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result different than that reached by the Court. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent where the state court either

8

"identifies the correct governing legal rule" from the Supreme Court's cases and "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous"; the decision must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A petitioner can also obtain relief by showing that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (2000 ed., Supp. V). However, federal courts are required to presume the correctness of state courts' factual findings unless petitioners rebut the presumption with "clear and convincing evidence." Schriro v. Landrigan, 127 S.Ct. 1933, 1939-40 (2007); 28 U.S.C. § 2254(e)(1) (2000 ed., Supp. V).

**II  Petitioner's Summation Error Claim Does Not Warrant Relief**

Petitioner claims that the prosecutor's remark, "Mr. Rosario has absolutely every right not to take the stand," Trial Tr. vol. 2, 224, May 12, 2004, violated his right to remain silent under the Fifth Amendment. The Appellate Division rejected that claim. Because the state court's decision was not contrary to, or based on an unreasonable application of, clearly established Supreme Court law, petitioner's summation error claim does not entitle him to federal habeas corpus relief.

In his defense summation, Rosario's attorney told the jury, "Now one thing that I think you have seen in Mr. Rosario is that he is completely, his native language is almost exclusively Spanish." Id. at 198. After the court overruled an objection, defense counsel continued, "You have seen it not only through your own eyes, you have seen Mr. Rosario at the table with the interpreter." Counsel added, "Now one thing that first of all casts great doubt on the undercover's testimony and the Prosecution's case is that who was the undercover actually talking to when he made that phone call? Its [sic] clear he wasn't talking to Mr. Rosario." Id. at 198-99. Counsel recounted the telephone conversation between UC 29512 and "Shorty," and

argued, "Now anybody who has tried to speak a language they're not totally familiar with, into a phone, realizes the difficulties. This kind of conversation is beyond anything we have heard Mr. Rosario could have done." Id. at 199-201.

During her summation the prosecutor stated:

> Now the Defense counsel would like you to believe that Mr. Rosario does not speak one word of English. He does not speak one word of English. He can't get by with anything other than Spanish. Spanish is his only language. Now ladies and gentlemen. Mr. Rosario has absolutely every right not to take the stand and --

Id. at 224. The court overruled an objection by defense counsel and a sidebar took place off the record. When the prosecutor continued she argued that the defense theory that petitioner could neither speak nor understand English was internally inconsistent because it posited on the one hand that petitioner did not know enough English to participate in a telephone conversation with UC 29512, and on the other hand that petitioner knew enough English to speak to UC 29512 in person at the rendezvous. Id. at 225-27.

After the prosecutor's summation, defense counsel moved for a mistrial on the ground that the prosecutor had

11

impermissibly commented on petitioner's right not to testify. The court denied the motion, noting that defense counsel quickly objected to the complained-of remark and that the "subject was changed immediately." The court therefore ruled that the remark did not warrant a mistrial. Id. at 246-47.

In its final charge to the jury, the court stated: "The defendant did not take the witness stand in this case. I charge you that the fact that the defendant did not testify in this case is not a factor from which any inference unfavorable to the defendant may be drawn." Id. 251.

The Appellate Division ruled that the prosecutor's remark did not urge the jury to draw any inference from petitioner's failure to testify, was cut off by defense counsel's prompt objection, and was responsive to defense counsel's argument that petitioner did not know enough English to converse by telephone with UC 29512. The court concluded that under these circumstances, the trial court's delivery of the standard "no inference" instruction, "which the jury is presumed to have followed,

was sufficient to prevent any prejudice." People v. Rosado, 29 A.D.3d at 431.

The Fifth Amendment, in its bearing on the States by reason of the Fourteenth Amendment, prohibits the prosecutor from suggesting to the jury that it may treat defendant's silence as substantive evidence of guilt. Baxter v. Palmigiano, 425 U.S. 308, 319 (1976); Griffin v. California, 380 U.S. 609, 615 (1965). However, the Fifth Amendment does not prohibit a prosecutor from fairly responding to an argument of the defendant by adverting to the defendant's failure to testify. United States v. Robinson, 485 U.S. 25, 34 (1988). If there has been a violation of the privilege, the court must then determine "whether the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." Fox v. Mann, 71 F.3d 66, 72 (2d Cir. 1995).

The state courts' decisions here were consistent with the Supreme Court's Fifth Amendment cases. Most importantly, the prosecutor here did not suggest that the jury should treat Rosario's failure to testify as evidence of guilt. Rather, the prosecutor merely stated that Rosario had "absolutely every right not to take the stand."

13

Lakeside v. Oregon, 435 U.S. 333 (1978) directs that the proscription of commentary about a defendant's silence by a prosecutor or trial judge applies only to *adverse* comments. See id. at 338-39; Griffin, 380 U.S. at 615. Although one may speculate as to what the prosecutor here would have said had she not been interrupted, as both the trial court and the Appellate Division noted, defense counsel's objection cut off any further remarks on the subject. Because the prosecutor's statement that "Rosario absolutely has every right not to take the stand" cannot be characterized as adverse, i.e. as suggesting that Rosario's failure to testify should be taken as evidence of guilt, the statement did not violate the Fifth Amendment.

The Appellate Division also concluded that the prosecutor's comment was a fair response to defense counsel's argument that petitioner did not know enough English to converse by telephone with UC 29512. This conclusion is consistent with Supreme Court precedent. In United States v. Robinson, defense counsel made several statements to the jury to the effect that the Government had unfairly denied respondent an opportunity to explain his actions. 485 U.S. at 27-28. In response, the prosecutor was permitted to note that defendant could have

testified to give his explanation. Id. at 28. The Court held that "where a prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege." Id. at 32.

Here, defense counsel twice suggested that based on Petitioner's use of an interpreter during the trial, the jury should draw the conclusion that he spoke no English -- leading to the conclusion that Petitioner could not be the person with whom UC 29512 arranged the drug sale over the phone. The context of the prosecutor's comment supports the conclusion that that it was in response to comments by the defense attorney. Because the comment did not suggest that the jury should draw an adverse inference from Petitioner's silence, any prejudice that resulted from the prosecutor's comment was *de minimis*. The Appellate Division was therefore correct to conclude that the prosecutor's comment was a fair response.

Particularly in light of the trial court's curative instruction, it is clear that the prosecutor's comment did not render the trial "fundamentally unfair." Fox v. Mann, 71 F.3d at 72. The Appellate Division's

15

conclusion that Petitioner did not suffer prejudice as a result of the prosecutor's comment was thus consistent with federal law, and Petitioner is not entitled to relief on his summation error claim.

### III  Petitioner's Claim That His Sentence Is Invalid Because He Was Not Interviewed by the Probation Department Does Not Warrant Relief

Petitioner claims that his sentence is invalid because he was not interviewed by the Probation Department before the sentence was imposed. It is not necessary to address the question of whether a defendant has a constitutional right to be interviewed for a presentence report, because Petitioner has failed to rebut the trial court's factual determination that Petitioner waived his interview with the Probation Office. This Court is bound to presume the correctness of the trial court's factual findings unless Petitioner rebuts the presumption with "clear and convincing evidence." Schriro, 127 S.Ct. at 1939-40; 28 U.S.C. § 2254(e)(1). The Petitioner's argument relies on his statement to the trial judge that "They brought me in the morning to 2 o'clock in the afternoon and told me I was not going to see anyone here." Sentencing Tr. 2-3, May 28, 2004. The meaning of this statement is

not clear, and it is therefore insufficient to rebut the presumption that the trial court's factual determination was correct.

### III  Petitioner's Claim That His Sentence Is Excessive Does Not Warrant Relief

Petitioner claims that his sentences of eight to sixteen years and seven to fifteen years imprisonment are excessive and should be reduced in the interests of justice to three concurrent sentences of four and one-half to nine years.

The Eighth Amendment, which applies against the States by virtue of the Fourteenth Amendment, see Robinson v. California, 370 U.S. 660 (1962), provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Supreme Court has held that the Eighth Amendment forbids only extreme sentences that are "grossly disproportionate" to the crime. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment); United States v. Snipe, 441 F.3d 119, 152 (2d Cir. 2006). The general rule is that the

courts should not intrude on the "basic line-drawing process that is pre-eminently the province of the legislature when it makes an act criminal . . . ." Rummel v. Estelle, 445 U.S. 263, 275 (1980). Rosario's sentence is by no means an extreme example that would justify such a departure. Cf. Solem v. Helm, 463 U.S. 277 (1983) (vacating life sentence without parole for defendant convicted of passing a bad check for $100) with Harmelin, 501 U.S. 957 (affirming sentence of life in prison without parole for possession of 650 grams of cocaine); Hutto v. Davis, 454 U.S. 370 (1982) (habeas relief not available for defendant sentenced to 40 years in prison and $20,000 fine for possession of approximately nine ounces of marijuana); Rummel, 445 U.S. 263 (habeas relief not available for defendant sentenced to life in prison for obtaining $120.75 by false pretenses).

**Conclusion**

For the above-stated reasons, Rosario's petition for a writ of habeas corpus is denied.

It is so ordered.

**New York, N.Y.
April // , 2008**

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　**ROBERT W. SWEET
　　　　　　　　　　　　　　U.S.D.J.**

19